UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-CR-20255-WPD

UNITED STATES OF AMERICA

v.

PATRICK BOYD and
CHARLES BOYD,

Defendants.
_____/

## MOTION FOR POST VERDICT RELIEF

Charles Boyd ("Boyd") through undersigned counsel submits this Motion for Post Verdict Relief that includes a Motion for Judgement of Acquittal, pursuant to Rule 29(c), Fed.R.Cr.P., and Motion for New Trial, pursuant to Rule 33(a), Fed.R.Cr.P. Boyd further states the following:

## BACKGROUND

Following a jury trial that included two days of jury deliberation, Boyd was convicted of seven counts of an eight-count indictment that had charged Boyd and his brother Patrick Boyd with various offenses relating to the purchase and sale of HIV drugs that had improperly diverted into the supply chain. Boyd was remanded at the time of the jury verdict being returned. Boyd's Unopposed Motion to Extend Time to File Post Trial Motions was granted with a new filing date of November 21, 2025. (D.E. 225). Boyd's sentencing is scheduled for January 20, 2026. Boyd submits two post-trial motions in this pleading: Motion for Judgment of Acquittal pursuant to Rule 29(c), Fed.R.Cr.P. and; Motion for New Trial pursuant to Rule 33(a), Fed.R.Cr.P.

Two of the eight counts alleged conspiracies for which the jury was asked to determine whether specific objects of the conspiracy had been proved beyond a reasonable doubt. The jury determined that Boyd was guilty of the conspiracy alleged in Count I of the Indictment to introduce

or deliver for introduction into interstate commerce adulterated and misbranded drugs with the intent to defraud or mislead, and to defraud the FDA. The jury found that only one of the three alleged objects of the Count I conspiracy had been unanimously proved. Specifically, the jury determined Boyd guilty of "introducing or delivering for introduction into interstate commerce misbranded drugs with the intent to defraud or mislead." Boyd's jury did not find Boyd guilty of two other alleged objects of the Count I conspiracy, to wit: "introducing or delivering for introduction into interstate commerce adulterated drugs with the intent to defraud or mislead" and "defrauding the FDA." (D.E. 213 at 1).

Count IV of the Indictment alleged a conspiracy to traffic in pre-retail medical products with false documentation. Of the two alleged objects of that conspiracy, Boyd's jury determined that Boyd was guilty of "knowingly possessing, transporting, or trafficking in a pre-retail medical product involving false or altered labelling or documentation (including documentation relating to origination or shipping)". The jury did not find Boyd guilty of "knowingly and falsely making or altering the labeling or documentation (including documentation relating to origination or shipping) of a pre-retail medical product." (D.E. 213 at 2).

Count V alleged a wire fraud conspiracy. Count V did not identify multiple objects and the jury was accordingly not asked to determine whether specific objects of the conspiracy had been proved beyond a reasonable doubt. (D.E. 10 at 13-14; D.E. 213 at 2).

Boyd was acquitted of Count VI of the Indictment that alleged wire fraud involving a wire transfer of $400,000 from a Worldwide Pharma Sales account to a Citizens Bank account belonging to Gentek for the purchase of diverted and misbranded HIV drugs. The Worldwide Pharma Sales account was an account related to Adam Brosius and not Boyd, or Boyd's company, SafeChain. (D.E. 213 at 2).

2

Boyd was found guilty of four substantive offenses. Counts II and III related to the introduction of misbranded HIV drugs into interstate commerce (D.E. 10 at 11-12). Counts VII and VIII charged wire fraud. Count VII involved an October 30, 2020 email from Brosius to Boyd and Patrick Boyd lauding the amount of HIV sales during the past month and predicting continued voluminous HIV sales (D.E. 10 at 14-16). Count VIII alleged an April 13, 2021 email from SafeChain to a pharmacy customer that caused a wire attaching a falsified pedigree accompanying SafeChain sales of misbranded and diverted HIV drugs to that pharmacy. (Id.).

## MOTION FOR JUDGMENT OF ACQUITTAL

Boyd, pursuant to Rule 29(c) Fed.R.Cr.P., moves for a judgment of acquittal, and renews previous motions for judgment of acquittal, as to each of the seven counts of the indictment for which the jury returned guilty verdicts. Boyd further states the following:

Boyd recognizes that the Rule 29(c) Motion requires the Court to consider evidence in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in the Government's favor. United States v. Rodriguez, 732 F.3d 1299, 1303 (11th Cir. 2013). Since credibility determinations are for the jury to decide, the Court must conclude that the jury decided those issues in a way supporting the jury's verdicts. United States v. Jiminez, 564 F.3d 1280, 1285 (11th Cir 2009). The Government is not required to disprove every hypothesis of innocence. United States v. Foster, 878 F.3d 1297, 1304 (11th Cir. 2018). A verdict based on circumstantial evidence must be supported by reasonable inferences, not mere speculation. United States v. Rodriguez, 732 F.3d at 1303.

As to Count I of the indictment alleging Conspiracy to Introduce Adulterated and Misbranded Drugs and to Defraud the United States, the jury's determination that the Government had only proved beyond a reasonable doubt one of the three objects of that conspiracy requires

3

that a judgment of acquittal, or an equivalent recognition, as to the two objects that the jury failed to reach a unanimous determination be entered. Boyd submits that the most appropriate remedy would be a determination that Boyd was only convicted in Count I with the Offense of Conspiracy to Introduce Misbranded Drugs.

Applying the same concept to Count IV of the Indictment, Boyd submits that an order of acquittal, or an equivalent determination, be entered reflecting that Boyd was not found to have "knowingly and falsely made or altered the labelling or documentation of a pre-retail medical product." There is no logical or legitimate reason that when a multi-object conspiracy is presented to a jury for determination that the actual decision of the jury not be accurately reflected. In this instance Boyd's jury did not reach a unanimous determination that he had "knowingly and falsely made or altered the labelling or documentation of a pre-retail medical product."

As to the three conspiracy counts (Count I, Count IV and Count V), Boyd renews his previously made Rule 29 motions and arguments that the Government failed to establish sufficient evidence to support a jury determination of "intent to defraud" and "willfulness" as required by the conspiracy counts.

Counts II and III charge Boyd with substantive offenses relating to two separate shipments of misbranded the HIV drug Biktarvy from outside of the State of Florida to pharmacies located in the Southern District of Florida. The two shipments relate to a transaction on January 21, 2021 (Count II) and February 23, 2021 (Count III). However, there was insufficient proof that Boyd had knowledge, let alone an intent to defraud, relating to either of the two particular shipments at or before the shipments were actually made. Accordingly, Boyd submits that judgments of acquittal should be entered as to both Counts II and III.

Counts VII and VIII allege substantive wire fraud allegations. Count VII involves a wire

transmission authored by Adam Brosius transmitted to Boyd and Patrick Boyd announcing a monthly amount of HIV drugs sold and forecasting yearly HIV drug sales. An email transmitted to a defendant authored by a separate individual is insufficient evidence to establish that the recipient of the email committed the substantive offense of wire fraud. The fact that had Brosius arguably had the required intent in authoring and transmitting the email to commit the offense of wire fraud does not establish Boyd the alleged recipient of the email maintains the requisite intent and knowledge to support a substantive wire fraud offense. While there might have been Boyd transmissions that satisfied the wire fraud essential elements, the transmission selected by the Government in Count VII was not one of them.

Likewise, the substantive Mail Fraud offense alleged in Count VIII is not supported by sufficient evidence that Boyd was aware prior to, or at the time of transmission, that the described email was being, or was sent. Without proof of that knowledge, there could not be sufficient proof that Boyd had the requisite intent to commit the wire fraud charged in Count VIII.

## RULE 33 MOTION FOR NEW TRIAL

Charles Boyd ("Boyd") through undersigned counsel pursuant to Rule 33(a), Fed.R.Cr.P. moves this Court to issue an order granting a new trial based on the interests of justice. Boyd further states the following:

Boyd's Rule 33(a) Motion for New Trial is based on the interests of justice requiring a new trial. Boyd submits that the evidence preponderated heavily against the verdict as to each of the seven counts that the jury returned a guilty verdict. Boyd recognizes that granting a new trial based on the weight of the evidence following a jury guilty verdict is not favored and is sparingly granted. However, in considering Boyd's Motion for New Trial the Court need not review the evidence in the light most favorable to the verdict. The Court may weigh the evidence and consider the

credibility of the witnesses. United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). In other words, a Rule 33(a) Motion is not limited to the restrictions imposed for consideration of Rule 29, Motions for Judgement of Acquittal. The distinction makes logical and common sense since Rule 29 motions seek acquittals, while Rule 33(a) motions seek new trials.

The Court in evaluating a Rule 33 Motion for New Trial must make a determination whether the evidence preponderates heavily against the verdict. See, Butcher v. United States, 368 F.3d 1290, 1296 (11th Cir. 2004). Boyd submits that the verdict in his case populates the narrow space in which a new trial is mandated.

The evidence at trial established that Boyd's company SafeChain purchased HIV drugs from five primary vendors. The five vendors selling HIV drugs to SafeChain were brought to SafeChain by codefendant Adam Brosius. SafeChain subsequently sold the HIV drugs purchased from the five vendors to various pharmacies. The five Brosius sourced HIV vendors had acquired the HIV drugs sold to SafeChain from outside of the supply chain. None of the vendors, nor Brosius, informed Boyd that SafeChain was purchasing diverted HIV drugs. Each of the five HIV vendors concealed the true source of the HIV drugs sold to SafeChain and each of the five vendors falsely represented to SafeChain that the HIV drugs were legitimately sourced from within the supply chain. Simply stated, SafeChain, at least Boyd, believed the false representations being made concerning the legitimacy of the HIV drugs SafeChain was purchasing.

An owner of one of the five HIV vendors, Peter Khaim, testified at Boyd's trial. Khaim admitted that he concealed from Boyd the truthful sourcing of the HIV drugs sold to SafeChain from Khaim's company Boulevard. The Court sustained Boyd's objection and instructed the jury to disregard Khaim's false volunteered statements that Boyd knew that Boulevard HIV drugs were acquired by Khaim from the black market. Khaim admitted that he had orchestrated the scheme to

falsely represent to SafeChain that his company was a legitimate wholesaler, even going to the extreme of creating a false state wholesale licensing certification. Khaim falsely claimed to SafeChain and Boyd that the HIV drugs he was supplying to SafeChain were coming from pharmacies that were overstocked or going out of business, mainly due to Covid related issues.

The other Brosius sourced HIV vendors engaged in various schemes to create the illusion of legitimacy. The Government failed to offer any proof that Boyd knew that the Brosius HIV vendors were fraudsters. Certainly, Brosius never informed Boyd that he was bringing sophisticated scam artists to SafeChain.

The evidence established that in November 2020 the main manufacturing source of the HIV drugs being sold to SafeChain, Gilead, had filed a law suit in the Southern District of Florida. That law suit revealed that Gilead was aware that Gilead sourced HIV drugs had entered the black market and were being circulated. Gilead, despite having communications with SafeChain in the fall of 2020, never informed SafeChain, or for that matter other wholesalers, that Gilead manufactured drugs had flooded the black market. Instead, Gilead beginning in March 2021 launched an aggressive public relations campaign blaming SafeChain with being the distribution source of black-market HIV drugs to pharmacies.

Gilead subsequently served SafeChain with a demand letter in which much of the information Gilead had withheld from SafeChain concerning SafeChain receiving Gilead HIV drugs that had infiltrated the black market was disclosed. SafeChain, and Boyd specifically, was told by Brosius and the Frier Levitt attorney representing SafeChain, that Gilead's claims were in fact attempts to conceal manufacturing issues that Gilead was suffering from.

Based on the Gilead accusations, as well as investigation that Boyd encouraged, SafeChain severed relationships with HIV vendors, and attempted to elevate and sophisticate its vendor

approval process. Boyd was unsuspecting of Brosius, having fallen for Brosius's claim of legitimacy and honesty. Boyd also received reassurances from the Frier Levitt attorneys that Frier Levitt had been following the Southern District of Florida law suit and that SafeChains's issues were unrelated to the flooding of black-market HIV drugs revealed in that lawsuit. Boyd believed Brosius's continued representations that SafeChain was being victimized by Gilead who was attempted to divert attention away from Gilead's manufacturing issues that had resulted in wrong pills being place in HIV medication bottles.

In the absence of any evidence establishing that Boyd knew that SafeChain was being defrauded and thus attempting to defraud others or act in a willful manner, the Government attempted to establish that Boyd should have known of the fraud being perpetrated. Unfortunately, the "he should have known" theme sought to scrutinize Boyd actions in retrospect with the benefit of hindsight as opposed to viewing Boyd's actions in the real time they were occurring.

The evidence was clear that Boyd sought assistance from, and deferred to, his compliance team, as well as presenting legal issues to what he believed was competent legal counsel. Boyd's defense of good faith was based upon his documented attempts to follow what he understood to be SafeChains responsibilities relating to HIV drug purchases and sales. Boyd's good faith, including that SafeChain collect and provide accurate information, was inconsistent with any intent to defraud or willfulness.

The three major witnesses who testified against Boyd, the Frier Levitt attorney, the SafeChain compliance director, and Peter Khiam, were in the words of the trial court "barbequed" by Boyd during cross examination. There is no question that Boyd made decisions that in retrospect, knowing all of the information, appear to have been erroneous. There is no question that Boyd made critical mistakes in judgment. But what is missing from the record is the necessary

8

evidence that Boyd acted with the necessary intent to defraud and willfulness mandated by the charged offenses.

Boyd would therefore respectfully request that based upon the totality of circumstances that the Court make a finding that the evidence preponderates against the verdict and order a new trial.

## CONCLUSION

Based upon the arguments presented in this application, Boyd requests that the relief sought in his Rule 29(a) application be granted, and in the alternative based on Rule 33(a), Boyd be granted a new trial.

Dated: November 21, 2025

**By: s/ Bruce A. Zimet, Esq.**
Florida Bar No. 0225053
**BRUCE A. ZIMET, P.A.**
1555 Palm Beach Lakes Blvd., Suite 1400
West Palm Beach, FL
33401 Tel: (561)
508-7741
Tel: (954) 764-7081
Email: BAZ@BruceAZimetLaw.com
*Counsel for Charlie Boyd*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 21, 2025

**By: s/ Bruce A. Zimet, Esq.**
Florida Bar No. 0225053
**BRUCE A. ZIMET, P.A.**
1555 Palm Beach Lakes Blvd., Suite 1400
West Palm Beach, FL 33401
Tel: (561) 508-7741
Tel: (954) 764-7081
Email: BAZ@BruceAZimetLaw.com
*Counsel for Charlie Boyd*
