USA v. C. Boyd

**Exhibit C**

1:24-CR-20255-WPD

## SETTLEMENT AGREEMENT

This Settlement and Release Agreement (the "Agreement") is entered into and is effective among and between Gilead Sciences, Inc. and Gilead Sciences Ireland UC, and Gilead Sciences, LLC (together "Gilead"), on the one hand, and Defendants Safe Chain Solutions, LLC, Patrick Boyd, and Charles Boyd (collectively, "Safe Chain") on the other. Gilead is referred to herein as "Plaintiffs." Gilead and Safe Chain are each referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, on July 22, 2021, Gilead filed an anti-counterfeiting action captioned *Gilead Sciences, Inc., et al. v. Safe Chain Solutions, LLC, et al.*, No. 21-cv-04106-AMD-RER in the United States District Court for the Eastern District of New York (the "Court") against certain defendants ("the Action"), including Safe Chain;

WHEREAS, on July 23, 2021, the Court entered an Asset Freeze Order and Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction against, *inter alia*, Safe Chain (Minute Entry of July 23, 2021, Dkt. No. 19);

WHEREAS, on July 29, 2021, Safe Chain agreed to the entry of a preliminary injunction in connection with the Action and the Court entered the preliminary injunction (Dkt. Nos. 25, 28);

WHEREAS, on March 18, 2022, the Parties mediated in good faith, and at arms-length, under the supervision of then-Magistrate Judge Ramon E. Reyes, Jr.;

WHEREAS, on January 13, 2023, Safe Chain filed counterclaims in the Action against Gilead (Dkt. No. 899);

WHEREAS, on May 3, 2023, Gilead filed its Sixth Amendment Complaint, the currently operative complaint in the Action (Dkt. No. 1056);

WHEREAS, on July 14, 2023, Gilead moved to dismiss Safe Chain's counterclaims against Gilead (Dkt. Nos. 1141-1143);

WHEREAS, the Parties again mediated in good faith, and at arms-length, under the supervision of Magistrate Judge Joseph A. Marutollo;

WHEREAS, Safe Chain denies any liability to Gilead in the Action and has denied, and continues to deny, the claims raised by Gilead in the Action; and

WHEREAS, Gilead denies any liability to Safe Chain relating to Safe Chain's counterclaims and has denied, and continues to deny, the claims raised by Safe Chain in Safe Chain's counterclaims; and

WHEREAS, no Party admits the validity of any claims or defenses in the Action or Safe Chain's counterclaims, the events described therein, or otherwise; and

WHEREAS, Gilead wishes to settle on these terms because it is being paid essentially all of Safe Chain's assets and is obtaining a complete and permanent injunction; and

WHEREAS, Safe Chain wishes to settle and resolve all claims solely in order to avoid the time, expense, inconvenience, and uncertainties of litigation; and

WHEREAS, it is the mutual intention of the Parties to resolve the Action, pursuant to the terms set forth below;

NOW, THEREFORE, the Parties hereby execute this Agreement to reflect and memorialize the terms and conditions of their settlement, and hereby affirm that, in consideration of these promises and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, covenant and agree as follows:

## AGREEMENT

1.    **Permanent Injunction.**  Gilead and Safe Chain agree to execute and be bound by the Consent Judgment and Permanent Injunction attached as Exhibit C, which provides for, *inter alia*, the dismissal of the Action against Safe Chain, including Charles Boyd and Patrick Boyd, with prejudice ("**Consent Judgment and Permanent Injunction**").  Within three (3) business days of the Effective Date of this agreement, Gilead will file and seek entry of the Consent Judgment and Permanent Injunction with the Court.  The Parties waive any rights to appeal the entry of the Consent Judgment and Permanent Injunction.  The terms of the Consent Judgment and Permanent Injunction are incorporated into this Agreement as if fully set forth herein.

2.    **Settlement Payment.**

a.    Safe Chain shall pay to Gilead a total sum of two million, seven hundred and thirty thousand, one hundred and eleven dollars and thirty one cents ($2,730,111.31) (the "Settlement Amount") for full resolution of this matter to the attorney trust account of Gilead's attorneys, Patterson Belknap Webb & Tyler ("PBWT") in the manner described in the remaining paragraphs of this Section.  This sum is calculated based on the Parties' understanding of the current cash value of the below-described accounts.  The payment to Gilead of the current cash value of the below-described accounts, net of any transaction or broker fees associated with liquidating those assets, shall fully resolve this matter between the parties, regardless of whether that value is higher or lower than the dollar value listed above.  Gilead shall, however, receive all of the funds in the frozen accounts even if the accounts increase in value.

b.    Pursuant to the Consent Judgment and Permanent Injunction (as defined above), Univest Bank and Trust Co., as depository for some of the funds identified on Table 1 of Exhibit A, will immediately be directed to release all funds in the frozen account ending in

2

4019 (the "Univest Account"), with a current balance of $1,925,160.35, to Gilead in partial satisfaction of the Settlement Amount.

c.      In addition, Wells Fargo Advisors, as depository for some of the funds identified on Table 1 of Exhibit A, will immediately be directed to liquidate all holdings and then release all funds in the frozen account ending in 6080 (the "Charles & Christi Boyd Investment Account"), with a current balance of $576,922.66, to Gilead in partial satisfaction of the Settlement Amount.

d.      In addition, BayVanguard Bank (alternatively known 1880 Bank), as depository for some of the funds identified on Table 1 of Exhibit A, will immediately be directed to release all funds in the frozen account ending in 4995 (the "Patrick Boyd Checking Account"), with a current balance of $275.16, to Gilead in partial satisfaction of the Settlement Amount.

e.      In addition, Queenstown Bank of Maryland, as depository for some of the funds identified on Table 1 of Exhibit A, will immediately be directed to release all funds in the frozen account ending in 3201 (the "Dorchester Holdings LLC Account"), with a current balance of $48,985.41, to Gilead in partial satisfaction of the Settlement Amount.

f.      In addition, New York Life Insurance Company will immediately be directed to liquidate life insurance policy Numbers 24 174 858 and 24 174 966, with current net cash values, respectively, of $76,513.84 and $77,358.42, and the policy Number 794414459, with a current net cash value of $24,895.47, and then release the net cash values to Gilead in partial satisfaction of the Settlement Amount.

g.      Each bank, brokerage house, financial institution, or life insurance company acting as depositor or holder for the accounts identified on Table 1 of Exhibit A and described in paragraphs (b)-(f) above will release and remit, together, the entire value held in each account, net of any transaction or broker fees associated with liquidating those assets, to Gilead in full satisfaction of the Settlement Amount.

h.      All payments required by this Agreement must be made to Gilead via wire, ETF transfer, or check to the escrow account of its attorneys, PBWT (the "**Settlement Account**") pursuant to wire transfer instructions attached as Exhibit B.

i.      This Agreement shall be held in escrow until receipt of the above listed funds from all of the transfers described in the foregoing subparagraphs (b)-(f).  Within three (3) business days of PBWT's confirming of receipt of the above listed funds, this Agreement shall be released from escrow and given full and binding effect as of the date on which it is released from escrow ("Agreement Escrow Release Date").  The Parties will fully cooperate to secure the release of the funds in each of the accounts to Gilead.

j.      The dollar values listed for each account in the foregoing subparagraphs (a) – (f) are for informational purposes only based on the Parties' current understanding of the present cash value of each account described therein.  The parties understand that those values may fluctuate from time to time due to market conditions beyond their control.

3

Thus, for the avoidance of doubt, the Parties agree that Safe Chain shall have fully satisfied its obligation to pay the Settlement Amount pursuant to this paragraph 2 once the entire cash value of the accounts identified in Table 1 of <u>Exhibit A</u> at the time those assets are liquidated, net of any transaction or broker fees associated with liquidating those assets, has been transferred to Gilead pursuant to the foregoing subparagraphs (g) and (h).

3.    **Payment Default**.  If Safe Chain obstructs or otherwise impedes the transfers described above in Section 2 such that the transfers are not timely made and resulting in a default, or if the balances in any of the accounts are less than the balances as listed on Table 1 of <u>Exhibit A</u>, Gilead may send written notice of non-payment to Safe Chain in accordance with paragraph 9 of this Agreement.  Safe Chain will have thirty (30) calendar days from the date of such notice to cure the default, time being of the essence. If the default is not timely cured, the entire unpaid portion of the Settlement Amount shall immediately become due and owing and Gilead will be immediately and automatically entitled to a judgment against each of Safe Chain Solutions, LLC, Patrick Boyd, and Charles Boyd, jointly and severally, for violation of this agreement in the entire unpaid portion of the Settlement Amount owed by Safe Chain plus interest of 1% per month, with Safe Chain Solutions, LLC, Patrick Boyd, and Charles Boyd waiving all defenses and objections they may have to Gilead's application for this judgment. Gilead shall be entitled further to its actual attorneys' fees and investigators' fees for obtaining and collecting this portion of the judgment and shall be entitled to an *ex parte* asset freeze in the unpaid amount.  This Agreement will remain in full force and effect and continue to be effective notwithstanding that any of Safe Chain Solutions, LLC, Patrick Boyd, or Charles Boyd becomes the subject of any bankruptcy or insolvency proceeding.

4.    **Breach**.  In addition to the foregoing remedy for nonpayment, in the event of any violation of this Agreement or the terms of the Consent Judgment and Permanent Injunction, Gilead may take any and all actions available under this Agreement or permitted under any applicable law to collect on the joint and several obligations and liabilities of Safe Chain Solutions, LLC, Patrick Boyd, or Charles Boyd, enforce this Agreement, or enforce the Consent Judgment and Permanent Injunction.  For the avoidance of doubt, nothing contained in this Agreement requires Gilead to pursue Safe Chain Solutions, LLC before pursuing Charles Boyd or Patrick Boyd, who are jointly and severally liable for the Settlement Amount.

5.    **Discovery Rights/Cooperation.**  Safe Chain shall use their best efforts to cooperate in good faith with Plaintiffs with respect to the Action, and be truthful at all times with respect to questions asked of them and information sought from them by Plaintiffs in connection with the Action.  Without limiting Safe Chain's agreement to cooperate in good faith with reasonable requests by Plaintiffs, the Parties specifically agree:

a.    Safe Chain will provide documents reasonably requested by Plaintiffs, to the extent they have not already produced the documents in the Action.  To the extent that Safe Chain possess documents that are subject to confidentiality restrictions (other than those imposed by any Protective Order entered in the Action), they will use their best efforts in good faith to obtain relief from said restrictions.

b.    During the pendency of the Action, including any appeals, Safe Chain agrees to cooperate with Plaintiffs and Plaintiffs' legal counsel in connection with Plaintiffs' claims

against the remaining defendants in the Action (and any defendants added to the Action in the future) by being truthful in all matters about which they are asked and of which they have knowledge. Safe Chain's cooperation, without limitation, may include (i) responding in a timely fashion to formal and informal requests for documents and information, (ii) participating in telephone calls and meetings to truthfully and completely answer questions, (iii) reviewing documents and information, and (iv) providing sworn testimony in whatever form that Plaintiffs require, including for use in support of court filings, at deposition and/or at trial.

c.      Safe Chain shall be entitled to have their own legal counsel represent them in any actions reasonably requested by Plaintiffs pursuant to paragraphs 5a and 5b.  The fees of Safe Chain's legal counsel shall be the sole responsibility of Safe Chain.

d.      This Agreement is expressly not conditioned upon the substance of any information or testimony Safe Chain may provide, and cannot be construed to require Safe Chain to testify to or otherwise provide information that is not true or that is misleading.  Subject to paragraph 12, should Safe Chain provide false or misleading testimony, provide Plaintiffs with information they know to be untrue, or materially breach subsection (a) or (b) of this paragraph 5, Plaintiffs may void this Agreement, and all provisions thereof, including the release granted to Safe Chain in paragraph 8.

e.      For the avoidance of doubt, nothing in this Paragraph or in this Agreement requires Safe Chain to waive its Fifth Amendment privilege or attorney-client privilege at any time, or provide any information to Gilead that is subject to any legal privilege, including but not limited to any joint defense/common interest material.

6.      **Effective Date.**  The "**Effective Date**" of this Agreement is the date on which all Parties have executed this Agreement and the Consent Judgment and Permanent Injunction.

7.      **Audit.**  Following entry of the Consent Judgment and Permanent Injunction, to ensure Safe Chain's compliance with the Consent Judgment and Permanent Injunction, Gilead shall have the right, upon at least thirty days prior written notice, to have an independent firm audit, at Gilead's expense, Safe Chain's records of purchases and sales of all products purchased or sold by Safe Chain after the date of the Consent Judgment.  The independent firm shall not be permitted to provide any information discovered during any such audit to Gilead unless it relates to (a) Gilead-branded products; or (b) Safe Chain's lack of compliance with the Consent Judgment and Permanent Injunction.  Gilead's right to demand such an audit shall not be exercised more than once in any twelve-month period.

8.      **Mutual Releases.**

a.      Upon entry of the Consent Judgment and Permanent Injunction, except for the duties, responsibilities, and obligations which are set forth in this Agreement, Gilead, on behalf of itself and its respective officers, directors, owners, employees, former employees, parent and subsidiary entities, affiliated entities, predecessors, successors, assigns, agents, attorneys, and representatives (collectively, the "Plaintiffs Releasors"), hereby releases Safe Chain and its respective officers, directors, owners, employees, former employees,

5

parent and subsidiary entities, affiliated entities, predecessors, successors, assigns, agents, and representatives, Charles Boyd, and Patrick Boyd (collectively, the "Safe Chain Releasees") from any and all claims, causes of action, or demands of any nature whatsoever, anticipated or unanticipated, known or unknown at this time or at any time prior to the date hereof, existing from the beginning of the world through the date of this Agreement and arising from or relating to the Action, including but not limited to all claims that are asserted or that could have been asserted in the Action, and any of the Parties' respective rights therein.

b.      However, nothing in this Settlement Agreement is intended to or shall be construed to release any other Defendant in the Action or any other person or entity other than the Safe Chain Releasees.  For avoidance of doubt, the foregoing release does not release any of Safe Chain's customers, suppliers, trading partners, brokers, or independent sales representatives, nor may any of those individuals and/or entities use this release as a defense against any claim brought by Gilead against them.

c.      Upon entry of the Consent Judgment and Permanent Injunction, except for the duties, responsibilities, and obligations which are set forth in this Agreement, the Safe Chain Releasees, on behalf of themselves and their predecessors, successors, assigns, agents, and representatives hereby release the Plaintiffs Releasors and their attorneys from any and all claims, causes of action, or demands of any nature whatsoever, anticipated or unanticipated, known or unknown at this time or at any time prior to the date hereof, existing from the beginning of the world through the date of this Agreement and arising from or relating to the Action, including but not limited to all claims that are asserted or that could have been asserted in the Action, and any of the Parties' respective rights therein.

9.      **Notices.**  All notices required or permitted to be provided hereunder shall be afforded to the respective Parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary), or internationally recognized overnight courier as follows or to such other addresses or recipients designated by a Party by written notice from time to time:

If to Gilead:

> Geoffrey Potter, Esq.
> PATTERSON BELKNAP WEBB & TYLER LLP
> 1133 Avenue of the Americas
> New York, NY 10036
> Email:  gpotter@pbwt.com *and* CounterfeitGileadMedications@pbwt.com *and* anticounterfeiting@gilead.com

If to Safe Chain or Charles Boyd or Patrick Boyd:

> Charles Boyd
> Patrick Boyd
> Safe Chain Solutions

822 Chesapeake Drive
Cambridge, MD 21613
Email: CharlesB@Safechain.com
        PatB@Safechain.com

*With a copy to:*

August J. Matteis, Jr.
William E. Copley
Matthew S. Krauss
William E. Jacobs
Weisbrod Matteis & Copley PLLC
3000 K Street NW, Suite 275
Washington, DC 20007
Email: amatteis@wmclaw.com
        wcopley@wmclaw.com
        mkrauss@wmclaw.com
        wjacobs@wmclaw.com

10.   **Costs.**  Each of the Parties shall bear its own costs, attorneys' fees, and other fees incurred in connection with the Action and this Agreement.

11.   **Choice of Law.**  This Agreement shall be construed and governed by the laws of the State of New York, without regard to conflicts of law principles thereof.

12.   **Consent to Jurisdiction.**  The Parties consent to the jurisdiction of the United States District Court for the Eastern District of New York for any adjudication, application, action, suit or proceeding necessary to enforce the terms of this Agreement and waive any and all objections they may have in such enforcement proceeding to the laying of venue in such court, that such court is an inconvenient forum for such enforcement proceeding, or that such court does not have personal jurisdiction over them in such enforcement proceeding.

13.   **Severability.**  The language of this Agreement has been approved by each of the Parties.  The language of this Agreement shall be construed as a whole according to its fair meaning.  In the event that any provision or portion of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, the remainder of this Agreement shall be valid and enforceable and continue in full force and effect between the Parties, just as if the provision held to be illegal, unenforceable, or void had never been included in this Agreement, and the provision held to be illegal, unenforceable, or void shall be changed or interpreted so as to best accomplish the objectives of such provision within the limits of applicable law or court decisions.

14.   **Entire Agreement.**

a.   This Agreement constitutes a single written contract that expresses the entire agreement and understanding concerning the subject matter between the Parties and supersedes and replaces all prior communications, negotiations, understandings, proposed

agreements, or agreements, whether written or oral concerning the Action.   All understandings, representations and agreements heretofore had with respect to this Agreement concerning the Action are merged into this Agreement, which alone fully and completely expresses the agreement of the Parties.

b.      Each Party acknowledges and warrants that no Party, nor any attorney, agent, or representative of any Party, has made any promise, representation, or warranty whatsoever, expressed or implied, written or oral, not contained herein concerning the subject matter hereof to induce that Party to execute this Agreement.

c.      Each Party acknowledges and warrants that he or it has not executed this Agreement in reliance on any promise, representation, or warranty not expressly set out in this Agreement.

15.      **No Oral Modification.**  This Agreement may only be amended in writing, signed by authorized representatives of the Parties.

16.      **Binding Nature of the Agreement.**  This Agreement is and shall be binding upon, and shall inure to the benefit of, the predecessors, successors, heirs, and assigns of all Parties to the extent permitted by law.

17.      **Headings.**  The headings contained in this Agreement are inserted for convenience, identification, and/or reference only, shall not affect the interpretation or meaning of this Agreement or any provision contained herein, and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Agreement or any provision contained herein.

18.      **Interpretation.**   Each party hereto agrees that this Agreement shall not be construed or interpreted for or against any party as the drafter thereof since both Parties have participated in its preparation.

19.      **Counterparts.**   This Agreement may be executed in counterparts, including electronically, and as of the Effective Date each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.  This Agreement may be executed on varying dates, and a PDF of the executed Agreement shall have the same force and effect as a hard copy of the original.

20.      **Voluntary Execution of Agreement.**  This Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the Parties hereto.  The Parties acknowledge that:  They have read this Agreement; they have been represented in the preparation, negotiation and execution of this Agreement by legal counsel of their own choice; they understand the terms and consequences of this Agreement and of the releases it contains; and they are fully aware of the legal and binding effect of this Agreement.

21.      **Authority.**  Each individual executing this Agreement represents and warrants that he/she has the authority to do so and that execution and delivery of this Agreement has been duly and validly authorized by the Party on whose behalf he/she is signing.  Each Party releasing claims herein represents and warrants that no other entity has any interest or right in or to such claims.

22.     **Waiver.**  The failure of a Party to object to, or a waiver by any Party of, one or more breaches or violations of this Agreement shall not constitute a waiver or limitation upon the right of such Party to object to, or operate or be construed as a waiver or estoppel of, any other breach or violation of this Agreement.  No waiver by any Party of any breach or of any right under this Agreement shall be valid unless in writing and signed by an authorized representative of such Party.

23.     **Final Accord and Satisfaction**.  When executed and delivered by all Parties, this Agreement is intended to be final and binding between the Parties hereto and is further to be effective as a full and final accord and satisfaction between the Parties hereto as to any dispute involved in the Action, and each Party expressly relies on the finality of this Agreement as a substantial, material factor inducing the Party's execution of this Agreement.

*[remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties have executed this Agreement on the respective dates set forth below.

GILEAD SCIENCES INC.


Dated: _____      By: _____


                              Name: _____


                              Title: _____


GILEAD SCIENCES IRELAND UC


Dated: _____      By: _____


                              Name: _____


                              Title: _____


GILEAD SCIENCES, LLC.


Dated: _____      By: _____


                              Name: _____


                              Title: _____

10

SAFE CHAIN SOLUTIONS, LLC

Dated: 2/19/2024                    By: _____

                                   Name: Charles Boyd

                                   Title: Founder & CEO


PATRICK BOYD

Dated: _____            Signature: _____


CHARLES BOYD

Dated: 2/19/2024                   Signature: _____

**EXHIBIT A**

Table 1: Bank Accounts

| Bank Name | Account Title | Account Number Ending In | Balance (Current) |
|---|---|---|---|
| Univest Bank and Trust Co. | Equitable Trust Account | 4019 | $1,925,160.35 |
| Wells Fargo Advisors | Charles & Christi Boyd Investment Account | 6080 | $576,922.66 |
| BayVanguard Bank (1880 Bank) | P. Boyd personal checking Account | 4995 | $275.16 |
| Queenstown Bank of Maryland | Dorchester Holdings LLC Account | 3201 | $48,985.41 |
| **TOTAL** | | | $2,551,343.58 |

Table 2: Life Insurance Policies

| Policy Holder | Insurance Company | Policy Number | Current Cash Surrender Value |
|---|---|---|---|
| Charles Boyd | New York Life Insurance | 24174858 | $76,513.84 |
| Charles Boyd | New York Life Insurance | 794414459 | $24,895.47 |
| Patrick Boyd | New York Life Insurance | 24174966 | $77,358.42 |
| **TOTAL** | | | $178,767.73 |

**EXHIBIT B**

| | |
|---|---|
| Bank: | Citibank, N.A.<br>Private Banking Division<br>153 East 53th Street<br>New York, NY 10022 |
| ABA Routing No.: | 021000089 |
| Account No.: | 54371288 |
| Swift #: | CITIUS33 |
| Account Title: | Patterson Belknap Webb & Tyler LLP Attorney Trust Account-IOLA |
| Reference: | Gilead-Safe Chain Settlement |

## **EXHIBIT C**

(Consent Judgment and Permanent Injunction)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
```
GILEAD SCIENCES, INC., *et al.*,        :
                                         :
                  Plaintiffs,      :     Case No. 21-cv-4106-AMD-JAM
                                         :
v.                                        :
                                         :
SAFE CHAIN SOLUTIONS, LLC, *et al.*,  :
                                         :
                  Defendants.    :
```
-------------------------------------------------------------- x
```

**CONSENT JUDGMENT AND PERMANENT INJUNCTION**
**AS TO SAFE CHAIN SOLUTIONS, LLC, PATRICK BOYD, AND CHARLES BOYD**

On consent of Plaintiffs Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead Sciences, LLC (together, "Gilead" or "Plaintiffs") and Defendants Safe Chain Solutions, LLC, Patrick Boyd, and Charles Boyd (collectively, "Safe Chain"), and pursuant to Fed. R. Civ. P. 54(b), it is hereby ORDERED, ADJUDGED, and DECREED:

1.     Safe Chain, and their predecessors, successors, agents, and assigns, or any other person in active concert and participation with them, is enjoined from importing, purchasing, selling, distributing, marketing, or otherwise using in commerce in the United States any Gilead Products (as defined below), including authentic products, or assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in this paragraph.

2.     The "Gilead Products" are defined as all products manufactured by or sold by Gilead or its subsidiaries in the United States, including but not limited to all products bearing

anywhere any of the Gilead Marks (as defined below), whether on the product itself or any of its packaging.

3.     The "Gilead Marks" include the following:

| Trademark | Registration Number | Registration Date |
|---|---|---|
| GILEAD | 3251595 | June 12, 2007 |
|  | 2656314 | December 3, 2002 |
| GSI | 3890252 | December 14, 2010 |
| BIKTARVY | 5344455 | November 28, 2017 |
| DESCOVY | 4876632 | December 29, 2015 |
| DESCOVY FOR PREP | 5912591 | November 19, 2019 |
| 9883 | 5467392 | May 15, 2018 |
|  | 5636131 | December 25, 2018 |
|  | 5906177 | November 12, 2019 |
|  | 5030567 | August 30, 2016 |
|  | 5154303 | March 7, 2017 |
| TRUVADA | 2915213 | December 28, 2004 |
| GENVOYA | 4797730 | August 25, 2015 |
| ATRIPLA | 3276743 | August 7, 2007 |
| RANEXA | 3094007 | May 16, 2006 |
| VOSEVI | 5259592 | August 8, 2017 |
| STRIBILD | 4263613 | December 25, 2012 |
|  | 6031751 | April 14, 2020 |
| SOVALDI | 4468665 | January 21, 2014 |
|  | 5018106 | August 9, 2016 |
| 7977 | 4585257 | August 12, 2014 |

4.     Nothing in this Consent Judgment and Permanent Injunction prohibits Charles Boyd and/or Patrick Boyd from purchasing any Gilead Product, as defined above, for their own personal medical use (not for resale) in accordance with all applicable laws or owning less than 5% of any public company.

5.     Safe Chain, on behalf of themselves and their officers, directors, owners, predecessors, successors, assigns, agents, and representatives hereby assign to Plaintiffs any and all claims for damages and restitution against all other Defendants in the Action and/or third

parties, permissive or mandatory, asserted or unasserted, anticipated or unanticipated, known or unknown at this time or at any time prior to the date hereof, existing from the beginning of the world through the effective date of the Settlement Agreement executed between Safe Chain and Gilead (the "Settlement Agreement") and arising from or relating to Safe Chain's purchase or sale of Gilead Products.

6.    Following entry of the Consent Judgment and Permanent Injunction, to ensure Safe Chain's compliance with this Consent Judgment and Permanent Injunction, Gilead shall have the right, upon at least thirty days prior written notice, to have an independent firm, at Gilead's expense, audit Safe Chain records of purchases and sales of all products purchased or sold by Safe Chain after the date of this Consent Judgment.  The independent firm shall not be permitted to provide any information discovered during any such audit to Gilead unless it relates to (a) Gilead-branded products; or (b) Safe Chain's lack of compliance with this Consent Judgment and Permanent Injunction.  Gilead's right to demand such an audit shall not be exercised more than once in any twelve-month period.

7.    In addition to other remedies, including damages, for contempt of this Permanent Injunction, in the event of breach or violation of the terms of this Permanent Injunction by Safe Chain, or their predecessors, successors, agents, and assigns, or any other person in active concert and participation with them, Gilead is entitled to a preliminary and permanent injunction against the breaching conduct solely upon a showing of likelihood of success of establishing that such a breach occurred.  In addition, Gilead shall be entitled to recover its actual attorneys' fees and investigatory fees for investigating and demonstrating that Safe Chain has violated this Consent Judgment and Permanent Injunction.

8.      This Consent Judgment is entered pursuant to Fed. R. Civ. P. 58, and this action is hereby dismissed against Safe Chain Solutions, LLC, Charles Boyd, and Patrick Boyd with prejudice, and Safe Chain's counterclaims against Gilead (*see* Dkt. No. 899) also are dismissed with prejudice, without costs or attorneys' fees, save that this District Court shall retain jurisdiction over this action, including over Safe Chain, for matters relating to implementation of, or disputes arising out of, this Consent Judgment or the settlement of this action.

9.      If a court of competent jurisdiction finds that Safe Chain has violated the prohibitions of this Consent Judgment and Permanent Injunction, Gilead is entitled at its election to either liquidated damages of one hundred times (100x) the U.S. Wholesale Acquisition Cost ("WAC") of the authentic Gilead product that Safe Chain sold (individually, or on its behalf by their principals, agents, attorneys, members, servants, employees, directors, officers, parents, successors, heirs, assigns, executors, representatives, and subsidiaries, and all other persons in active concert or participation with them) or Gilead's actual, statutory, and punitive damages as may be permitted by law.  In any action, regardless of which measure of damages Gilead selects, Gilead shall be entitled to recover its actual attorneys' fees and investigatory fees for finding and demonstrating that Safe Chain has violated this Consent Judgment and Permanent Injunction.

10.     Safe Chain relinquishes all rights to the funds/cash values in the accounts identified below (the "Frozen Settlement Funds"):

| Bank Name/Insurance Company | Account Title/Policy Holder | Account Number Ending In | Balance/Net Cash Surrender Value (Current) |
|---|---|---|---|
| Univest Bank and Trust Co. | Equitable Trust Account | 4019 | $1,925,160.35 |
| Wells Fargo Advisors | Charles & Christi Boyd Investment Account | 6080 | $576,922.66 |
| BayVanguard Bank (1880 Bank) | P. Boyd personal checking Account | 4995 | $275.16 |

| | | | |
|---|---|---|---|
| Queenstown Bank of Maryland | Dorchester Holdings LLC Account | 3201 | $48,985.41 |
| New York Life Insurance Company | Charles Boyd | 24174858 | $76,513.84 |
| New York Life Insurance Company | Charles Boyd | 794414459 | $24,895.47 |
| New York Life Insurance Company | Patrick Boyd | 24174966 | $77,358.42 |
| **TOTAL** | | | $2,730,111.31 |

11.    The Court's Asset Freeze Order (Dkt. No. 19, as modified by Dkt. Nos. 28, 121, 401) as to Safe Chain Solutions, LLC, Charles Boyd, and Patrick Boyd, is hereby MODIFIED as follows:

    a.    Counsel for Plaintiffs or Safe Chain may immediately serve this order upon the financial institutions identified or described in Paragraph 10.

    b.    Upon service of this Order on any of the financial institutions or life insurance companies identified or described in Paragraph 10, such financial institution shall immediately liquidate all holdings in the accounts and then wire all funds (net of any transaction or broker fees associated with liquidating those assets) in the accounts identified or described in Paragraph 10 to a non-interest-bearing escrow account held by counsel for Plaintiffs at Citibank, Private Banking Division, 153 East 53th Street, New York, NY 10022, ABA # 021000089, Swift # CITIUS33, Account # 54371288, Account Name Patterson Belknap Webb & Tyler LLP Attorney Trust Account-IOLA. Confirmation of the date and amount of each wire transfer shall be sent to counsel for Gilead at GPotter@pbwt.com and counterfeitgileadmedications@pbwt.com and counsel for Safe Chain at

amatteis@wmclaw.com, wcopley@wmclaw.com, mkrauss@wmclaw.com, and wjacobs@wmclaw.com.

c.  Immediately following the completion of any transfer set forth in Paragraph 11.b above, the financial institution that has completed the transfer shall promptly provide notice to counsel for both Gilead and Safe Chain that the transfer is complete, at the following email addresses: For Gilead, gpotter@pbwt.com and counterfeitGileadmediations@pbwt.com; and for Safe Chain:  amatteis@wmclaw.com, wcopley@wmclaw.com, mkrauss@wmclaw.com, and wjacobs@wmclaw.com.  Upon receipt of the funds, Gilead's counsel shall promptly confirm by reply email to both the financial institution completing the transfer and Safe Chain's counsel that the transferred funds were received.

12.  Consistent with the foregoing, the Court's asset freeze order (Dkt. No. 19, as modified by Dkt. Nos. 28, 121, 401) as to Safe Chain Solutions, LLC, Charles Boyd, and Patrick Boyd only is otherwise hereby DISSOLVED, but—unless and until further order of this Court— otherwise remains in effect as to any other parties to which it applies as of the date of this order.

13.  Signatures to this Consent Judgment transmitted electronically or by facsimile shall be deemed original.


[*signatures on following page*]

DATED:        February 19, 2024

CONSENTED AND AGREED TO BY:

PATTERSON BELKNAP WEBB & TYLER LLP                    WEISBROD MATTEIS & COPLEY PLLC

By: _____                  By:  /s/ August J. Matteis, Jr.
     Geoffrey Potter                                       August J. Matteis, Jr.
     Timothy A. Waters                                     William E. Copley
     Thomas P. Kurland                                     Matthew Krauss
     Gizele Rubeiz                                         William E. Jacobs
1133 Avenue of the Americas                           3000 K Street NW, Suite 275
New York, NY  10036-6710                              Washington, DC 20007
T: 212-336-2000                                       T: 202-499-7910
F: 212-336-2222                                       E: amatteis@wmclaw.com
E: gpotter@pbwt.com                                       wcopley@wmclaw.com
    twaters@pbwt.com                                     mkrauss@wmclaw.com
    tkurland@pbwt.com                                    wjacobs@wmclaw.com
    grubeiz@pbwt.com

*Attorneys for Plaintiffs*                            *Attorneys for Defendants Safe Chain*
*Gilead Sciences, Inc., et al.*                       *Solutions, LLC, Patrick Boyd, and Charles*
                                                      *Boyd*

**IT IS SO ORDERED**

 s/Ann M. Donnelly
_____
HON. ANN M. DONNELLY, U.S.D.J.

Dated:  2/29/2024 _____, 2024

7